IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OLEKSANDR ROMANYUK and** | : | |
| **NATALYA SILANTEVA,** | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 14-7062 |
| **LORETTA E. LYNCH, Attorney General** | : | |
| **of the United States, et al.,** | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

**Tucker, C.J.**                                                                                                           **December 16, 2015**

Currently before the Court are the parties' cross-motions for summary judgment. (Docs. 14-15.) Upon careful consideration of the parties' submissions and responses and for the reasons set forth below, Plaintiffs' Motion is DENIED and Defendants' Cross Motion is GRANTED.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

Plantiffs Oleksandr Romanyuk and Natalya Silanteva bring this immigration action against Defendants Attorney General of the United States, Director of United States Citizenship and Immigration Services ("USCIS"), and Acting District Director of USCIS. Plaintiffs challenge the rescission of their lawful permanent resident ("LPR") statuses by USCIS, alleging a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). The parties do not dispute the facts.

**A. Original Adjustment of Status to LPR**

Plaintiff Oleksandr Romanyuk was born in 1957 in the Ukraine. Mr. Romanyuk first entered the United States in 1995 as a nonimmigrant B-2 visitor for pleasure.[1] That status expired on March 11, 1996, but Mr. Romanyuk remained in the country. On April 27, 2001, Arta, Inc. d/b/a Arthur's Catering, where Mr. Romanyuk was working as a cook, filed a labor certification on Mr. Romanyuk's behalf. The labor certification was approved on April 28, 2003. In July 2003, Arthur's Catering filed an Immigrant Petition for Alien Worker ("Form I-140") on behalf of Mr. Romanyuk, supported by the approved labor certification, in order to make him eligible for an immigrant visa and permanent residence in the country. In conjunction with the Form I-140, Mr. Romanyuk filed an Application to Register Permanent Residence or Adjust Status ("Form I-485"). On January 22, 2004, USCIS denied Mr. Romanyuk's Form I-140 and Form I-485 because of Arthur's Catering's inability to show that it could provide Mr. Romanyuk's annual wages.

Mr. Romanyuk and Ms. Natalya Silanteva married on March 4, 2004 in Maryland.[2] Neither had obtained LPR status at that time. Ms. Silanteva was born in Uzbekistan and first entered the United States in September of 2000, also as a non-immigrant B-2 visitor for pleasure. Her B-2 status expired on March 11, 2001. On May 29, 2003, Ms. Silanteva won the immigration diversity lottery, making her potentially eligible for an available immigrant visa and adjustment of status to LPR. Ms. Silanteva filed a Form I-485 to adjust her status, but she was

---

[1] There are two general categories of visas, immigrant and nonimmigrant. A nonimmigrant visa, such as a B-2 visa, allows entry into the United States for a temporary period for limited purposes such as pleasure or business. An immigrant visa allows permanent residence in the country. *See generally* 8 U.S.C. § 1101 (definitions); *see also Directory of Visa Categories*, U.S. Dep't of State, Bureau of Consular Affairs, http://travel.state.gov/content/visas/en/general/all-visa-categories.html (last visited Dec. 14, 2015) (listing some, but not all, types of immigrant and nonimmigrant visas currently available to aliens).

[2] Mr. Romanyuk and Ms. Silanteva were divorced on August 5, 2015. This recent change in their marital status does not affect the Court's analysis.

not in lawful immigrant status at the time because her B-2 had expired.  To overcome this deficiency, Ms. Silanteva claimed that she was a "grandfathered" alien eligible for adjustment under 8 U.S.C. § 1255(i)[3] because she was the derivative beneficiary of her husband's labor certification with Arthur's Catering.

While awaiting a decision from USCIS on Ms. Silanteva's adjustment application, Mr. Romanyuk filed a second Form I-485 in an attempt to adjust his status to LPR again.  Mr. Romanyuk claimed eligibility as the derivative beneficiary of his wife's application, which in turn hinged on her diversity lottery eligibility.  On September 30, 2004, Mr. Romanyuk's and Ms. Silanteva's applications were approved and their statuses were officially adjusted to LPR.

### B.  Mr. Romanyuk's and Ms. Silanteva's Rescission Notices

On February 12, 2008, USCIS issued Notices of Intent to Rescind Plaintiffs' LPR status.  In its Notice to Ms. Silanteva, USCIS explained that it made a legal error by classifying Ms. Silanteva as a "beneficiary" under Section 1255(i).  Ms. Silanteva's rescission relied heavily upon a USCIS Interoffice Memorandum dated March 9, 2005 interpreting Section 1255(i).  *See* Interoffice Mem. from William R. Yates, Mar. 9, 2005, Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J., Ex. A, Doc. 19-1 [hereinafter "Yates Memo"].

The Yates Memo provided that a spouse who marries a principal alien under Section 1255(i) after April 30, 2001 cannot qualify as a grandfathered alien under the statute.  USCIS claimed that, because Plaintiffs were not married until 2004, Mr. Romanyuk was a principal alien under Section 1255(i) but Ms. Silanteva was an after-acquired spouse, so she did not meet the requirements for adjustment as provided by the Yates Memo.  Mr. Romanyuk's rescission

---

[3] As the Court will later discuss, Section 1255(i) enables certain individuals to apply for adjustment of status to obtain permanent residence if they are the beneficiary of a labor certification or an immigrant visa petition filed on or before April 30, 2001.  8 U.S.C. § 1255(i).

followed from Ms. Silanteva's rescission, as his original adjustment depended on Ms. Silanteva's LPR status adjustment.

### C. Rescission Proceedings

On March 20, 2008, rescission notices were filed with the Immigration Court ("IC"), officially initiating Plaintiffs' rescission proceedings. At the first IC proceeding held on October 27, 2008, the parties acknowledged that no facts were in dispute and a hearing on the substantive issues was set. The hearing was continued and rescheduled several times at Plaintiffs' request.

On March 3, 2010, Plaintiffs, relying on the five-year statute of limitations found in 8 U.S.C. § 1256(a), filed a Motion to Terminate the rescission proceedings. The IC denied the motion on August 3, 2010. Plaintiffs appealed the denial to the Board of Immigration Appeals ("BIA"), but the BIA denied review, deeming the appeal interlocutory and submitting the matter back to the IC for a final order. On July 1, 2011, the IC entered a final order rescinding Plaintiffs' LPR status. Plaintiffs appealed the final IC decision to the BIA, but it was dismissed with the BIA largely adopting the findings of the IC in an unpublished opinion.

Plaintiffs first attempted to appeal the BIA decision by filing a Petition for Review with the United States Court of Appeals for the Third Circuit, but the court dismissed the petition for lack of jurisdiction. Subsequently, on December 15, 2014, Plaintiffs filed a Complaint in this Court alleging a violation of the APA. On October 6, 2015, they filed the present Motion for Summary Judgment and Defendants cross-motioned.

## II. DISCUSSION

Plaintiffs move for summary judgment on the basis that rescission was unlawful because it did not occur within five years of Plaintiffs' original adjustment of status in accordance with 8 U.S.C. § 1256(a). Defendants cross-motion for summary judgment, arguing that the statute of

limitations was not violated and rescission was proper.  In the alternative, Plaintiffs allege that the legal interpretation of 8 U.S.C. § 1255(i) by USCIS, the IC, and the BIA was incorrect and that rescission was improper.  The Court will address these arguments in turn.

### A. In the Third Circuit, 8 U.S.C. §1256(a) does not require a final rescission order within the five year statute of limitations period.

Plaintiffs challenge the BIA's interpretation of the five-year statute of limitations found in Section 1256(a).  Specifically, they argue that actual rescission must occur within five years while USCIS argues that providing notice is sufficient to toll the statute of limitations.  For reasons that follow, the Court finds that complete rescission is not required within five years under Section 1256(a) and USCIS's actions in this case satisfy the limitations period.

#### a. Standard of Review

Judicial review of a summary judgment motion based on the APA differs from the review of a typical summary judgment motion.  *Uddin v. Mayorkas*, 862 F. Supp. 2d 391, 399-400 (E.D. Pa. 2012).  In an APA challenge, a district court may only set aside the agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "[I]n applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Uddin*, 862 F. Supp. 2d at 400 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

Normally, if an agency's enabling statute is unclear regarding a particular issue, the agency's reasonable interpretations are afforded deference.  *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).  There are, however, exceptions to this rule.  In *Bamidele v. INS*, the Third Circuit made clear that the interpretation of the statute of limitations in Section 1256(a) should not be afforded the same agency deference as other

statutory provisions. 99 F.3d 557, 561 (3d. Cir. 1996). A statute of limitations is not a matter requiring "particular expertise" that only an implementing agency possesses. *Id.* It follows that a statute of limitations challenge does not require any deference as it is a purely legal issue that "courts are better equipped to handle." *Id.* (quoting *Dion v. Sec'y of Health and Human Servs.*, 823 F.2d 669, 673 (1st Cir. 1987)). Accordingly, the BIA's interpretation of the statute of limitations in Section 1256(a) warrants no deference by a reviewing court.

      **b. Analysis**

Section 1256(a) provides a five year limitations period on rescission after an alien has been granted LPR status. Plaintiffs argue that rescission proceedings must not only be initiated within the five year period, but that actual rescission must also occur. They rely on the plain language of the provision for their argument. They also rely on *Quintana v. Holland*, 255 F.2d 161 (3d Cir. 1958), for the "long standing [sic] Third Circuit position that rescission must be completed within the state of limitations[.]" Br. in Supp. of Pls.' Mot. for Summ. J. 4, Doc. 14. The Court disagrees with Plaintiffs' interpretation of both Section 1256(a) and *Quintana*.

Section 1256(a) provides, in pertinent part, as follows:

> If, *at any time within five years* after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, *it shall appear to the satisfaction of the Attorney General* that the person was not in fact eligible for such adjustment of status, *the Attorney General shall rescind* the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

8 U.S.C. § 1256(a) (emphasis added). The language of Section 1256(a) does not plainly require rescission within the five year period provided. Rather, it provides that "[i]f, at any time within five years [of adjustment of status] . . . *it shall appear to the satisfaction of the Attorney General*

. . . , [then] the Attorney General shall rescind." *Id.* (emphasis added).  The time limitation is not directly connected to the instruction that the Attorney General rescind status.  Instead, the time limitation is immediately followed by the requirement that something "appear to the satisfaction of the Attorney General" indicating that the original adjustment was in error.  *Id.*  While it is unclear how much evidence needs to "appear" in order to justify rescission, the statute does not plainly require complete rescission within the five year limitations period.

Plaintiffs also rely on *Quintana v. Holland* to bolster their argument that actual rescission must occur to satisfy Section 1256(a).  255 F.2d 161 (3d Cir. 1958).  Their reliance, however, is misplaced.  The plaintiff in *Quintana* was a citizen of Spain who, after being adjusted to LPR status, was suspected of being a member of the Communist party.  *Id.* at 162-63.  Since communist affiliation would have made him ineligible for adjustment, the Immigration and Naturalization Service ("INS")[4] gave notice of intent to rescind the plaintiff's LPR status.  *Id.*  The ensuing investigation, however, did not establish any basis for rescission and the investigation closed.  *Id.* at 163.  More than five years after the plaintiff's original adjustment date, INS reopened the case to conduct a second investigation, which then became the basis for the plaintiff's rescission.  *Id.*

In *Quintana*, the Third Circuit held that providing notice of rescission within the statute of limitations period was not enough to satisfy the statute.  *Id.* at 164. While the Third Circuit did not provide guidance on what more was required to satisfy the limitations period, it did opine as follows:

---

[4] The Immigration and Nationality Act was previously administered by INS, an agency of the United States Department of Justice.  The Homeland Security Act of 2002 replaced INS with the current Department of Homeland Security ("DHS").  *See* 6 U.S.C. §§ 111-115.  Currently, USCIS is the agency within DHS that handles the administration of immigration services.

> What is the described action the Attorney General must take? In our opinion the giving of notice within the five-year period is not enough. The statute uses the words 'it shall appear to the satisfaction of the Attorney General' and so forth. We think that something appearing to an officer's 'satisfaction' means that he must have something more than a hunch about it, or even more than that he may be convinced in his own mind. We think it means a reasonable determination made in good faith after such investigation and hearing as is required.[5]

*Id.* (internal footnotes omitted). The Third Circuit reversed the plaintiff's rescission because the second investigation, which produced all the evidence material to rescission, did not begin until *after* the five-year period had elapsed. *Id.*

*Quintana* does not require this Court to reverse Plaintiffs' rescissions.[6] Though *Quintana* provides that there must be more than a mere "hunch" about an error in adjustment of status, nothing suggests that complete rescission must occur within five years of original adjustment of status to LPR.[7] *Id.* at 163. The present case satisfies the standard espoused in *Quintana*, which is that the Attorney General make "a reasonable determination [] in good faith" regarding an individual's rescission. *Id.* at 164. Here, the statute of limitations began running on September 30, 2004 when Plaintiffs' statuses were adjusted to LPR. Their rescission notices, including grounds for rescission, went out less than four years later on February 12, 2008. The Yates

---

[5] Plaintiffs seem to rely on the language "after such investigation and hearing as is required" in *Quintana* for the proposition that a formal hearing is always required. 255 F.2d at 164. This Court does not interpret that language as controlling in this context where, unlike in *Quintana*, no facts are in dispute. *Id.* Rather, what controls is the need for "a reasonable determination made in good faith." *Id.*

[6] The parties dispute whether or not notice effectively tolls the statute of limitations in Section 1256(a). Defendants' argument for tolling relies on *Singh v. INS*, 456 F.2d 1092 (9th Cir. 1972), and *Zaoutis v. Kiley*, 558 F.2d 1096 (2d. Cir. 1977), as well as the BIA decision *Pereira*, 19 I&N Dec. 169 (BIA 1984). Defendants also argue that *Quintana* no longer applies, relying on the reasoning provided by the Ninth and Second Circuits. While those cases explicitly reject *Quintana*, this Court is not bound by those decisions or the interpretation of *Quintana* they provide.

[7] Plaintiffs assert that *Bamidele v. I.N.S.*, 99 F.3d 557 (3d Cir. 1996), affirmed the Third Circuit's reasoning in *Quintana* that actual rescission must occur within five years under Section 1256(a). Plaintiffs, however, misread *Bamidele*. *Bamidele* addressed whether the five-year limitations period of Section 1256(a) applies when the agency action taken is deportation, not rescission. *Id.* at 562-63. The *Bamidele* court concluded that Section 1256(a) applies, but remained silent on whether actual rescission, or deportation, must be completed within five years of adjustment of status. *Id.* at 563. *Bamidele* therefore does not support Plaintiffs' reading of *Quintana*.

Memo upon which USCIS relied had been well established by the time the notices were sent. All parties appeared in an IC proceeding on October 27, 2008 and USCIS filed its brief with the IC on March 23, 2009. USCIS was acting on much more than a "hunch" by the time the statute of limitations expired on September 30, 2009. Indeed, USCIS had maintained its legal position for over nineteen months by the time the five year period came due. True, final rescission did not occur until after September 30, 2009, but what matters is the point at which USCIS made a reasonable determination that Plaintiffs were ineligibile for adjustment of status. It cannot be maintained that ongoing delays in rescission proceedings, some requested by Plaintiffs themselves, can defeat the statute of limitations. The Court therefore concludes that Section 1256(a) does not bar Plaintiffs' rescission.

### B.  Plaintiffs' rescission was proper under 8 U.S.C. § 1255(i)

If the Court finds that USCIS did not violate the statute of limitations found in Section 1256(a), which it so finds, then Plaintiffs alternatively challenge the BIA's legal basis for their rescissions. The matter hinges on the legal interpretation of 8 U.S.C. § 1255(i). Ms. Silanteva's—and, by extension, Mr. Romanyuk's—rescission was in large part based upon an interpretation of Section 1255(i) as recorded in the Yates Memo. For the reasons that follow, the Court finds that the BIA's interpretation of Section 1255(i) was proper and the rescissions lawful.

#### a.  Standard of Review

As explained above, a court's judicial review of agency action is guided by the APA and may only be set aside where the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Where the decision involves statutory interpretation, the reviewing court must first determine whether or not the statutory

provision speaks clearly to the issue. *Chevron*, 467 U.S. at 842-43 (1984). If the statute is clear, "the inquiry ends, as both the agency and the court must give effect to the plain language of the statute." *Yusupov v. Att'y Gen. of the U.S.*, 518 F.3d 185, 197 (3d Cir. 2008) (citing *Chevron*, 467 U.S. at 843 n.9).

If the statute is unclear, typically, the legal conclusions of the BIA are afforded deference so long as the proposed interpretation is reasonable. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (affording deference under *Chevron* to BIA decisions on the administration and enforcement of the Immigration and Nationality Act). "Where . . . the BIA issues a written decision on the merits, [the court] review[s] its decision and not the decision of the [IC]." *Bautista v. Att'y Gen. of the U.S.*, 744 F.3d 54, 57 (3d Cir. 2014). If the BIA adopts the interpretation of the IC, the court will afford that reasoning the same level of deference. *Patel v. Att'y Gen. of the U.S.*, 599 F.3d 295, 297 (3d Cir. 2010).

Meanwhile, "unpublished, single-member BIA decisions have no precedential value, do not bind the BIA, and therefore do not carry the force of law except as to those parties for whom the opinion is rendered." *De Leon-Ochoa v. Att'y Gen. of the U.S.*, 622 F.3d 341, 350 (3d Cir. 2010). Accordingly, these decisions are to be considered for their persuasive value. *Mahn v. Att'y Gen. of the U.S.*, 767 F.3d 170, 173 (3d Cir. 2014). Similarly, informal agency memorandum is afforded some deference if it is "consistent with the plain language and purposes of the [enabling] statute and if . . . consistent with prior administrative views." *Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801, 808 (3d Cir. 1999).[8]

---

[8] Procedurally, the BIA affirmed the decision by the IC, adopting the legal conclusions of the IC as it relates to Section 1255(i). The IC had accepted USCIS's interpretation of that section as memorialized in the Yates Memo. Since the BIA/IC decision and USCIS's informal interpretation of the statute are afforded the same level of deference, they will be analyzed as one agency action.

10

### b. Ms. Silanteva's Rescission

An alien physically present in the United States may apply for adjustment of status to LPR if he or she is eligible to receive an immigrant visa and an immigrant visa is immediately available at the time of the application. 8 C.F.R. § 245.1(a). An alien is ineligible for adjustment if, among other reasons, he or she "failed . . . to maintain continuously lawful status since entry into the United States[.]" *Id.* § 245.1(b)(6). For those in unlawful status, however, Section 1255(i) allows an alien to apply for an adjustment if he or she is a "beneficiary . . . of . . . an application for labor certification . . . that was filed pursuant to the regulations of the Secretary of Labor on or before [April 30, 2001]." 8 U.S.C. § 1255(i)(1)(B). A "beneficiary" includes "a spouse or child of the principal alien, if eligible to receive a visa under [8 U.S.C. § 1153(d).]" *Id.* An alien qualified under Section 1255(i) is a "grandfathered alien." 8 C.F.R. § 245.10(a)(1). If an alien is not grandfathered, he or she cannot be the principal adjustment applicant under Section 1255(i). *Estrada*, 26 I&N Dec. 180, 184 (BIA 2013).

The statute is unclear whether after-acquired spouses like Ms. Silanteva, who married after the sunset date of April 30, 2001, are eligible for grandfathering under Section 1255(i). USCIS's interpretation, memorialized in the Yates Memo, helps here by providing that the spousal relationship must have been in existence before April 30, 2001 in order to qualify a spouse as "grandfathered." The Yates Memo concluded that spouses acquired after April 30, 2001 are neither principal nor derivative beneficiaries under Section 1255(i), hence, they can never be "grandfathered" for purposes of adjustment. This interpretation was adopted by the BIA in a 2013 published opinion, *Estrada*, 26 I&N Dec. 180 (BIA 2013), which was cited as part of the BIA's reasoning in this case.[9]

---

[9] In *Estrada*, after determining that the statute, regulations, and legislative history did not provide guidance, the BIA reasoned that the purpose of the Section 1255(i) grandfathering provision was to preserve eligibility after

11

While the Yates Memo is informal guidance and the underlying BIA decision is unpublished, the Court finds their reasoning to be persuasive. This is particularly true given *Estrada*, a published BIA opinion which, under direct review, would be afforded *Chevron* deference. Mr. Romanyuk was a principal grandfathered alien under Section 1255(i) based on his April 27, 2001 labor certification with Arthur's Catering. Ms. Silanteva attempted to file as a derivative beneficiary eligible for grandfathering, but she did not marry Mr. Romanyuk until 2004, after the April 30, 2001 sunset date. Accordingly, the Agency correctly concluded that Ms. Silanteva, being an after-acquired spouse, was not a derivative beneficiary and, therefore, not grandfathered or eligible for adjustment of status under Section 1255(i). Further, she cannot otherwise overcome the fact that, because her visitor visa had expired, she was in unlawful status at the time she won the diversity lottery. Her adjustment to LPR status was therefore in error. Accordingly, the agency's decision to rescind Ms. Silanteva's LPR status is affirmed.

### c. Mr. Romanyuk's Rescission

Because the Court finds that Ms. Silanteva's rescission was proper under the APA, it follows that Mr. Romanyuk's rescission was also proper. Mr. Romanyuk filed his second Form I-485 for adjustment as the derivative beneficiary of his wife's diversity visa. The provision governing the allocation of diversity immigrant visas provides as follows:

> Treatment of family members. A spouse or child . . . shall, if not otherwise entitled to an immigrant status and the immediate issuance of a visa under . . . this section, be entitled to the same status, and the same order of consideration provided in the respective subsection, *if accompanying or following to join*, the spouse or parent.

---

the sunset date, not to create newly eligible derivatives. 26 I&N Dec. at 185. The BIA relied upon language found in a formal rule promulgated by DHS on LPR adjustment proceedings. *Id.* (citing Adjustment of Status to That Person Admitted for Permanent Residence, 66 Fed. Reg. 16,383, 16,384-5 (Mar. 26, 2011)). The Board concluded that after-acquired spouses and children do not qualify as grandfathered aliens for the purposes of Section 1255(i) adjustment. *Id.* at 184. Only those aliens who satisfied the grandfathering requirements on or before April 30, 2001 could preserve their eligibility for adjustment of status. *Id.* at 185. A subsequent change in circumstances can neither confer nor terminate grandfathered status. *Id.* at 185-86.

8 U.S.C. § 1153(d) (emphasis added).  Section 1153(d) clearly limits spousal beneficiaries of diversity immigrant visas to those "accompanying or following to join" a principal alien.

Since Ms. Silanteva was herself not eligible for a diversity immigrant visa, Mr. Romanyuk cannot claim derivative beneficiary status.  Even if Ms. Silanteva were eligible, Mr. Romanyuk cannot qualify for LPR status because he was not "a spouse . . . accompanying or following to join" Ms. Silanteva, the principal alien.  They married in 2004, a year *after* Ms. Silanteva won the lottery.  Further, Mr. Romanyuk never independently acquired an immigrant visa on the basis of his labor certification because Arthur's Catering was unable to show that it could provide annual wages.  Accordingly, it was proper for USCIS to rescind Mr. Romanyuk's LPR status.

### III.	CONCLUSION

For the reasons explained herein, the Court concludes that the rescissions of Mr. Romanyuk's and Ms. Silanteva's LPR statuses did not violate the statute of limitations in Section 1256(a).  In addition, the basis for their rescissions and the BIA's interpretation of Section 1255(i) were proper.  Accordingly, Mr. Romanyuk's and Ms. Silanteva's Motion for Summary Judgment is DENIED and USCIS's Cross-Motion for Summary Judgment is GRANTED.  An appropriate Order follows.